This is Judge Gonzalez. I'm Judge Gonzalez. I'm actually the Judge today. May it please the Court. My name is Oliver Flynn and I represent the Trend Exchange, Inc. I would like to eliminate Reserve 5. Sorry about that. That's it. There are two major and a couple of subservient issues here. I'd like to deal with one of the subservient ones first that I picked up and that is the scope of review of some of the issues. The Patsystems has set up a scope of review that the review of the aggression of evidence is on an abuse of discretion standard. That's a correct statement of the law, but it doesn't have anything to do with this case. The issues that we're here for is the preclusion of defenses, and it results in the non-omission of evidence. But the Judge held that certain defenses were waived, and as a result of that, it's precluded the presentation of evidence. It wasn't a decision like a 21-year stay with the evidence. It wasn't presented. And is there a reason that these defenses were presented earlier, say before the pre-trial conference, or before this committee's hearing? The case, this entire case has been run on a hamstring, Your Honor, due to economics. The fact is it's not an entirely difficult case. They say they sold us some goods, and we say that they didn't deliver the goods, and they say it was based on a contract. And we say, okay, the contract has a limitation in it. He said he didn't really say that until the hearing. Of course, if you guys read my colleague's question right there, he didn't assert that it was a defense. In our answer, we said it was a defense of facts, or even any defense in that regard. And you said, I think, that it was incorporated in your field, you'd say the claim, or that it was generally included in the way you approached the case. But it was unclear to me, particularly, did either your answer, your findings, your conclusion to the pre-trial memo, it wasn't really asserted there, so I assumed that your position was, hey, it's a contract case, and you're on a contract, and they're asking for damages arising out of the contract, and the contract is before the court, and all the terms are before the court. Therefore, there's no surprise. You used it as my argument, Judy. I don't know how to do that. An attorney suggests I actually do badly, but that is it. I apologize for saying it is correct that we did not raise the contract limitation until trial. That was a tactical decision, truly, at the time, because some of us felt that by doing that, we were kind of conceding that we owed anything, and we claimed that we didn't. And the damage issue is part of the plaintiff's claim. And one would, I think, safely assume that if you're a plaintiff, and you're proving damages, and they're based on a contract, and your own contract says that the damages are limited in this case to about $79,000, you would come forward and deal with that issue as to why the clause doesn't apply. And if I were a plaintiff, I would be afraid that the judge would say, You know, is inserting section 11.2, is that an affirmative defense, or is that something that the plaintiff has to prove in order to get damages? I'm sorry, Your Honor. It is part of their case. It is not part of our case. And I think that most of the — Let's see, what is part of their case? What is part of their case? Proving the damages and proving that the limitation does not apply. That is part of their damage proof. They want to prove that their damages are what they're entitled to under the contract. The contract says that they're entitled to X, Y, none. And I think that the cases in this circuit are pretty uniform on that issue. The ones that we've cited are relatively uniform. That limitation on damages is not an affirmative defense. It goes to the plaintiff's case. In fact, the only case that the trial court cited was one in which it was raised for the first time on appeal. And the question is where, technically, when you get a case like this, you have the 26 and the 108 compulsory disclosures. And one of those is the computation of damages that occur in this case. And from either side, as far as I'm aware, you didn't have any mandatory disclosures under 26 and 108. I don't think that issue was covered in the mandatory disclosures. Well, computation is mandatory. No. All I can say is I don't know what happened, but that is mandatory. This is a circuit 183. I just wanted to point out that my point was at the very outset, if you had a mandatory disclosure under 183, you would have noticed that they were claiming something, a million dollars or more, presumably by the three license payments that were being made or the monthly payments for maintaining the website. And it's a nonpayment of one or more of those. So I wonder, on occasion when you had that notice, you would have called somebody and said, what are you talking about because it's in your contract. But there was no discovery done in this case either, was there? There was one deposition taken, that of Mr. Slobber. But other than that, there was no discovery done. Just to sum it up for us, why do you think the magistrate judge are here? I think the magistrate judge are here because the limitation on damages is not an affirmative defense. It goes to the plaintiff's case. It is something that the plaintiff has to establish. Why? The defense is that the limitation that are in the plaintiff's own contract don't apply. That's the plaintiff's burden. The court's here in this circuit. In other words, this circuit is pre-uniformly held. It is not a limitation of damages. It's not an affirmative defense. And even if it were, it would not be waived unless it could be shown that there are some charges. And I don't know how that could be any worse. Absolutely. Quark, when you did that, the magistrate judge also limited you with regard to some other expenses that you had, and had to deal with a non-payment or a non-delivery service fee. So did you end up doing that because you hadn't notified either the party or the judge about that? Is that right? That's true. And that is nothing more or less than the plaintiff's case. The plaintiff said, we delivered the goods. And we said they didn't. We denied in paragraph 9 of the answer on page 152 of the record. We denied that they provided the security. Did you offer that as a finding of fact in your findings of fact? Because I read the magistrate judge saying that. So when he asked you for help, when he said educate me, make sure I know what I'm doing as a judge in this case, show me your findings of facts and conclusions of law, are there any other offenses, anything I need to know, anything I need to research? In your trial brief, did you say those things successfully, that they had major payments, that they hadn't delivered the service? We said that they hadn't delivered, yes. We did not specifically say in what regard. The issue, Your Honor, was raised in the scheduling order. It was raised in the guilty discovery that was taken in this case. In the deposition of Robert Flocker, it was raised in the judgment discovery in the joint scheduling order. Explicitly raised in the joint scheduling order, so that the judge and the opposing counsel did not have either danger upon damages in the paragraph in question or the non-delivery at all of the continuing services. I think it was explicitly deemed that the judge was not, no, Your Honor, was not explicitly teed up in the, it was not explicitly teed up on every detail of the provision of services meant systems provided. There was a general denial. In the discovery, Your Honor, in the deposition of Rob Flocker, which appears at page 318 of the record, he was asked why the trend on PayPal systems in places. Flocker says, Trend didn't have any financial resources in its business and had, in essence, been stopped as a result of the Dodd-Frank legislation. He was asked if there were any other reasons. Flocker said, We, PAX systems, didn't provide anything to us. PAX systems, part of the dialogue was we wanted to replace our existing trading systems. We've never received items that were discussed. We've received no service from PAX. There was no further inquiry on that. There could not possibly be any prejudice, and even if it were an affirmative defense, this Court has held, whether it's something arising out of the scheduling order, disclosures or anything, even if it arises at trial, if there's no prejudice to be shown, then it shouldn't be, it's not clear. The magistrate judge was pretty thorough. He took his time. He was exasperated, but overnight he thought about it and came back the next day and even talked about manifest injustice as the grounds for canceling relief from the scheduling order. And I gather that you had, did you actually ask him to do that, to grant relief on the grounds of manifest injustice? No, we didn't. So did you actually articulate to the magistrate judge that it was your problem and not your client's problem and sanctions should be imposed against you? No. It was essentially falling your sword. Did you say, look, it's our fault, not our client's fault? Don't punish our client, punish us. The lawyer who tried the case said that he did some other things that I wish he hadn't done. One of them was, well, you've got the record you have. That's true. That's true. And that lawyer will never utter the word surprise again in his life. Okay. So tell us what you asked the judge to do that he didn't do that you think was wrong. We asked the judge to allow us to put a defense onto our case that, number one, there was a contract limitation, which I would submit was something that the court could have and should have done maybe on its own because the contract is in evidence and it says what it says. The plaintiff has the duty to present its damages and if it's based on a contract and the contract has a limit, part of the burden of the plaintiff is to show why that didn't apply. Number two is the judge didn't allow us to put on any evidence of non-performance. They said we performed. We said we didn't. While the lawyer who tried the case did fall upon his sword, as you put it, Your Honor, he also tried to make an offer of proof and was not permitted to do so. So he did attempt to recover himself. The judge had decided, I would suggest from the outset, that because the defenses were not raised as affirmative defenses or pleaded as such, that they were waived, and that was his decision. I will defer to my colleagues, but you only have two-seventeen left and you asked for some time in order for a vote. I did. You may, Your Honor. Your time is reserved for two minutes, Your Honor. I beg your pardon, Your Honor? You have two minutes left. So, why don't you do some tag? We'll listen to you. Go ahead and sit, sit down, sit down. Then you'll have time afterwards to repent. Good morning, Your Honor. As soon as you're ready to please the Court. My name is Patrick Walsh, and I represent Penn Sisters. If I can address your question, Judge Shea, that you put to my colleague, there was Rule 26.81 disclosure in this case, and the magistrate judge, Court below, took note of that at the trial. And the magistrate judge also said that he had read the contract at some time in the past, in his remarks, during the trial in his willings, and that he had read it again that night. So he, on the record, we know that the magistrate judge, it's very interesting to me that he read the contract, and he saw the clause. Did you, in fact, raise the clause in any way, in any appeal or pretrial filings with the judge as director? Not at all, Judge. The clause was contrary to what counsel has told the Court. The clause, if it was going to be raised, should have been raised by the defendant. It is not a limitation. First, we would say it's facile. It doesn't apply at all, right? It is a clause that's based on payment of fees. So you didn't say anything about, no, we're asking for a million dollars. So we know there's a clause in the contract, and here's why it doesn't apply. No, you're wrong. It doesn't. We wouldn't have thought that that clause applied in any event because it is a limitation on liability based upon payment of fees. But if... In other words, John said the same thing, which was facile, but you didn't make any payments. Yes. Maybe a total of $75,000 in payments. I'm assuming that doesn't. $75,000. It was the license of the service on the website. It's on the website, yes. It is a software license, and payments are mutual. So something that requires $15,000 worth of payments, it was there. Yes, exactly. The software. So it maintains software. It maintains software, yes. So do they pay the $15,000 maintenance fee? They need some payments, right? But they just don't pay you $275,000. No. What did you provide them with? What did your client provide Trent with, actually? Trent was attempting to set up a commodities exchange. Initially, it was going to be motion picture futures. That didn't work out for regulatory reasons. They were going to move, I believe, into steel and metal futures. My client provides exchange platform solutions, software and services that are related to those. The platform is pretty key to the actual business that Trent was trying to establish, et cetera. And the nature of the business that Trent was trying to establish, the trading in those kinds of units was of some significant potential to damage if it malfunctioned or if there was a failure on the part of the system and the client lost a million dollars or more, then there would be some significant issues that would arise between you, Trent, and the client, Trent, that possibly or whose trade was vacated in some fashion. I think it's a fair statement, Your Honor. It's mission critical software. So you knew this was a startup business and you structured your payments on the license to accommodate that startup. Now, there was financing issues and you knew the risks and you tended to the event itself, the business itself. And so the clause opened up and shielded you as a provider of services and limited your damages, didn't it? It limited your exposure. The clause was meant to limit your exposure. It included negligence as well, didn't it? It did. So you knew the downsides or the potential risk to your client as well from the inclusion of the license. So that's why the clause was put in, right? The clause was there to limit the liability of both parties. But what we would say, and this was not developed by them, because the claimant did not trace it. The incident at the time clause does not work to prevent a claim from being defeated. The clause itself, I captured that from the magistrate justice statements in Oregon. Is your position that that's a political move? Do you see it as an affirmative defense? Yes, Your Honor. It is for no other reason. There are other reasons. I'm not going to give one very good reason. It is because it's protected from payments. But it's the higher damage cases the payments made. You would think there was a proof that you had damages from nonpayment for services rendered under the contract. Exactly right. Exactly. So, and yet, it was inerrant in your case. It didn't require proof outside the contract other than the nature of the responsibilities within the contract itself. We provide service. You provide payment. So, for example, if you look at AC, and you look at the number of confirmative defenses, such as accordance, satisfaction, or contributory negligence, there's a long list of them. Is this consistent with your position that this should have been an affirmative defense? A contract connotation clause, is that consistent with the AC affirmative defense? Yes, Your Honor. It is. Wait a second. What advice would you like to give? Well, I would say that it is included, that payment is one of the enumerated affirmative defenses, including AC, because the clause determines the payment of fees. Yes, Your Honor. So, for example, your assumption to the court says, so did Trent make any payments to ASDC? Yes, I did. Okay, so there was payment. So, help me understand this clause. It says, it's limited to the aggregate total of the charges made by customer or visitor. So, Trent is a customer, right, to ASDC. Under this agreement, during the 18 months immediately preceding the date in which the alleged liability is claimed to have been incurred. So, when did the alleged liability be incurred? The liabilities that have been incurred would have been incurred on different dates, but what would be the date of issuance of the various invoices? So, let me tell you, because I've seen the court report live, I totally know what this is. In the Magistrate Church, you know, the procedure lane was doing everything properly, but it seems as though, I mean, it's troubling that you ended up with an over-a-million-dollar judgment when only $39,000 had been paid, and this clause is in there. It's kind of contrary to your contract, and explain to me why that should be okay. Well, I'm on your honor. In the first instance, again, this wasn't, it was a clause such as wasn't interposed in the court below. I'm just telling you, we agree that it is an over-rejected instance, to be honest with you, Judge. Okay, and what I'd like to say, Judge, is that the arguments weren't developed in the court below on that this disposition would have been had that clause been asserted as evidence that it simply does not apply to the situation of non-payment of fees. Isn't that more true? Right? He funds and coaches horses through these higher economics of the contract. Okay, but how did bad systems really lose a million dollars in this bill? Is that really the amount of their damages? Well, certainly, they're the amount of fees that reduce the agreed amount of the payment of the system. But this is highly sophisticated financial technology software. Trent was looking to set up a nationwide commodities trading business. It was looking to make a very, very substantial profit from running what would have been the first exchange, first commodities exchange opened in a great many years. So it had huge ups and downs. The software itself is highly complex software that's used by national exchanges, not in North America, but in South America and Asia, to operate exchanges with millions, tens of thousands of customers. Some people, as I mentioned, were still specific to the Trent business. It was still specifically for Trent. It didn't really have a business at that point. But what you're describing is it's off-the-shelf software, but it needs to be highly configurable. It needs to be configured for Trent. And this time, and this work was not completed. Further to that, though, I can interject a question It's quite a different issue, and I don't mean to sob if you're not done on the issues my colleagues have raised, but an issue that was of concern to me is this. If Trent is claiming that Pat Systems was in material breach of the contract, why not to agree what it was supposed to deliver? Is that a uniformity defense? They have to plead? Or is that something they should be allowed justification for? Well, certainly they didn't raise it at all, at least in the timely way. Certainly it seems to me that if that was their claim, they could have raised it as a counterclaim to the extent that that claim would have allowed them to avoid it. My question was, how is there a counterclaim? If they're claiming there's a material breach by Pat Systems that excuses their non-performance, do they have to plead that as a material breach? That's an affirmative defense. They do your honor, under 8C, if their intention is that that allegation would allow them to avoid liability, that needs to be alleged as an affirmative defense. That's exactly the text. So we can see an avoidance for affirmative defense that you must be raised in response to a plea. Is there any other questions? I'd like to reach another point. Okay, just a follow-up. Actually, I just wanted to point to this. Your claim is a breach of contract. That's correct. That's correct. And their defense is you didn't deliver, so they didn't need to pay. That's in the sense that they alleged at trial. They never told you they didn't deliver, and so that's why they didn't need to pay before the trial. That's correct, your honor. The affirmative defense is, obviously, there's been some interactions between Trent and Patterson. The bill was the main service because it had been terminated for nonpayment, and there was some discussion between the parties that we'd say the service I thought that was the case was. There was evidence at trial and some testimony by Mr. Snyder, which, by the way, the magistrate judge did not want him to give, which is defective, that Pat Systems suspended its service for a short period of time due to, you know, there's also payment defeats. Let me say that I thought that was absolutely a witness as well who said, I'll have to get back to you on whether or not the service is resumed. I don't know my key bars that it should be resumed because I can't tell you personally. Is that accurate? That is accurate. The question was put to him. He knows it. As I recall the testimony, your honor, he knew that it had been resumed, but he didn't know what the time scale was. He understood it wasn't. It was a short suspension of the service. I'm still wondering why the general denial is an insinuation to the complaint for negligence of judicialized rejection. Did it ever, did it ever then, do you feel like failure to deliver? Well, because that is something that the descendant would necessarily have to have prove at trial. It was more than, it's something other than, for example, it was our burden to to prove the elements of a breach of contract claim that there was a contract, that we performed under the contract, that we issued in what is such a contract. So there's a general denial that you come and says that you did not perform under the contract. Those are the elements. But it, but it not, I mean, that's basically a check line. I don't think in any event, right, that issue was addressed at trial. Mr. Perry gave evidence that the software was provided, that maintenance was provided. So that was addressed, and that's something that the magistrate judge did not directly refer to in this case. The magistrate judge considered the testimony of Mr. Perry and the testimony of Mr. Swigert, right? And he wasn't as involved as you. As he was, but that evidence gave the elements. The issue of whether or not there had been a performance was something that the magistrate judge would have considered in arriving at his verdict. I see very short of time. Matt, you're over your time. Do I have time? Okay, are we able to sum up? Because we do have some time for questions. Yeah, I would like to make just one other point, and it was the first point that I think Mr. Fleming raised, which was the, you know, the standard review. It's, well, actually, at the heart of this case is the Rule 16e pretrial order that the magistrate judge required of the parties on several occasions. What it is that he was going to be trying. It was a mystery to me after the parole evidence that I sent had dropped out, it was a mystery to the court that questions were put repeatedly. And, again, it's fully described in the record of the magistrate judge's moral order. That was put repeatedly to counsel who were for Trent. And the court did never adopt a satisfactory answer. And it's certainly well within the court's discretion when the joint pretrial order does not, the default on the party does not accurately reflect the issues to be tried in a case for the judge to take a decision whether or not such an answer was worthy of a certain evidence or be introduced in the trial. This is fundamental to governance of, you know, on the actual trial process. That's what the federal rules do as a judge. That's what the case law in the circuits of this enacts, what the magistrate judge determined. And that determination, we would submit, is entitled to deference by this court. All right. Thank you very much, counsel. Thank you very much. If Your Honor is about to name and what happened here was that man systems started to supply a demonstrator system on somebody else's server with somebody else's software in Chicago and a friend paid for the first two installments of developing the software. The rest of these bills are for a monthly service that they didn't provide because they turned it off. That evidence, and I say that just so that you, Your Honor, understand what the payment was, but all of this was not allowed to be put into trial. This was not a... I'm hoping that this is an affirmative defense and should have been specifically disclosed. And no matter where you get into the analysis of it, whether you get into it at the answer level or at the mandatory disclosures level, it is a symbol. I sold you my car for $10,000. You didn't give me the car. I didn't pay you. And by the way, those credits, as you generally collect, the minimum amount, it doesn't deal with any extrinsic issues. All of the issues and the cases that we've cited from this surrogate... But why would Katherine and I have come out in the Roll 16 conference or in the pretrial conference where it is all very simple, as you said, and that's through Japan, so I believe in Europe, the trial counsel mentioned that in some of their papers. The proceedings were all peremptory proceedings and the parties just were operating on a shoestring and were not discussing much of anything. The defense was to put the plaintiffs to their proofs. As I say, it was not a complicated matter to show and the pretrial order says that they had approved that there was a contract that was breached and that there were damages, as your honor has pointed out. The cases of the plaintiffs are none of the issues raised by the defense about limitation. These unperforms are extrinsic to the plaintiff's case. The plaintiff says, I sold you the car. No, you didn't. That's what we have by general denials. It's not discussed of which affirmative defenses are made. It doesn't rely on any extrinsic evidence, no new theories, no new people. They simply, I did it. No, I didn't. They have disclosed more. I think that's true. Disclosures that foreclosing a party from putting on defenses, stuff that the plaintiffs were going to say put on the issues of how much the payments were and how much the charges were in order to get their damages. I didn't know all those facts. There's nothing new there. The question of whether they performed or not was denied. It was denied by Smarter and his staff. It was denied in the pre-trial order that they performed. And they knew why and if they wanted more specifics, the area where you get that is discovery. You know, claim them to death. This is, truly, it's blowing. Notice, we can get out of the water and move on. With that, Brother Roig, I always thank you for your indulgence. Thank you. Thank you, Mr. Counselor. And systems versus attributes change is a sit-in and decision of the parties in charge for today. Thank you very much.
judges: Wardlaw, Gould, Shea